**Edward G. LANGER, Petitioner,**

v.

**DEPARTMENT OF THE TREASURY, Respondent.**

No. 00–3388.

United States Court of Appeals, Federal Circuit.

Nonprecedential Opinion Issued June 20, 2001.

Precedential Opinion Issued Sept. 18, 2001.

Edward G. Langer, of Hales Corners, WI, pro se.

J. Reid Prouty, Captain, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. On the brief were David M. Cohen, Director; and Kathyrn A. Bleecker, Assistant Director. Of counsel was John J. Field, Attorney.

Before CLEVENGER, LINN, and DYK, Circuit Judges.

LINN, Circuit Judge.

Edward G. Langer appeals the final decision of the Merit Systems Protection Board ("Board" or "MSPB"), dismissing his individual right of action ("IRA") on the ground that he failed to make out a prima facie case under the Whistleblower Protection Act ("WPA"). *Langer v. Dep't of the Treasury,* Docket No. CH–1221–99–0540–W–1 (M.S.P.B.1999). Because the Board correctly applied a preponderance of the evidence standard, and correctly determined that Langer had failed to meet that standard to prove that he had made a protected disclosure under the WPA, we affirm.

## BACKGROUND

At the time of the alleged protected disclosures, Langer was a GS–15 Assistant District Counsel with the Internal Revenue Service ("IRS"). He worked under the direction of the Chief Counsel of the IRS. Langer's duties included reviewing actions taken by other IRS divisions such as the Criminal Investigation Division ("CID"). The CID performs both administrative and grand jury investigations based on criminal allegations of tax misconduct initiated by CID agents or by United States Attorneys.

Langer alleges retaliation as a result of seven whistleblowing disclosures that he made to the IRS beginning in the early 90s. Two of the disclosures regarded an imbalance in the number of Caucasians and African Americans being investigated using grand jury procedures. Three of the disclosures regarded the handling of secure "pink envelopes" within the IRS. One disclosure regarded improper performance appraisal procedures for a secretary. The last disclosure regarded wrongdoings in the CID. Specifically, Langer alleges that, as a result of these seven disclosures, he: (1) was suspended for one day; (2) received a lower than expected performance appraisal; and (3) was transferred from his former position in Milwaukee, Wisconsin to a new position in Chicago, Illinois.

### Disclosures 1 and 2

Disclosures 1 and 2 relate to Langer's perception that there was an imbalance in the number of Caucasians and African Americans being investigated by the CID using grand jury procedures. Regarding Disclosure 1, in the fall of 1995, three Assistant United States Attorneys ("AUSAs") called Langer into a meeting. During the meeting, they discussed with Langer the prosecution of a prominent African American individual who they believed was going to raise the "race card." The AUSAs asked Langer if he believed that the case might be vulnerable to attack on the basis of race. Langer testified that he told

the attorneys that he believed there was "a problem." He based his answer to the AUSAs on reviews of data regarding grand jury targets he had gathered with help from his subordinates. According to Langer, the data showed that more than half of the people targeted for grand jury investigations were African–American. Langer also testified that he told the AUSAs that he did not know whether these numbers were a "fluke" or conclusive of anything. As a result, he did not mention any possible reason for the anomaly or point to any specific violation.

Regarding Disclosure 2, Langer indicated that, shortly after his meeting with the AUSAs, he informed his supervisor, Nelson Shafer, about the meeting. He told Shafer that he thought there was a problem regarding racial targeting and that he was continuing to monitor the situation.

As to these disclosures, following a hearing to determine MSPB jurisdiction, the administrative judge found that Langer had failed to disclose a gross mismanagement, abuse of authority, or violation of law, rule or regulation, and therefore had failed to make a protected disclosure under the WPA. The administrative judge found that Langer merely pointed out a statistical anomaly without substantiating the phenomenon with any specific allegation of wrongdoing, and that Langer had acknowledged the possibility of other explanations for the identified statistical anomalies. Thus, the administrative judge found that Langer had failed to demonstrate the requisite reasonable belief for making a protected disclosure.

Additionally, the administrative judge found that Langer had failed to make a protected disclosure under the WPA because his alleged protected disclosures were made as part of his job. Finally, the administrative judge found that Disclosures 1 and 2 were not made to persons with authority to remedy the wrongdoings.

### Disclosures 3, 4, and 5

Disclosures 3, 4, and 5 relate to the handling of secure "pink envelopes" within the IRS. Langer testified that the IRS uses pink envelopes to designate mails that are intended only for the addressee to open. Langer produced a training memo that he had prepared, indicating that pink envelopes should be sent directly to the attorneys because they might contain confidential grand jury material. District Counsel Nelson Shafer had signed the training material.

Regarding Disclosure 3, Langer testified that at a meeting with fellow Acting District Counsels Miller and Bezel, he voiced his concern about secretaries opening pink envelopes. He alleges that this constituted a protected disclosure under the WPA. Regarding Disclosure 4, Langer claimed that his reminder to Miller that "the issue of the pink envelopes was still pending" constituted a protected disclosure under the WPA. Regarding Disclosure 5, Langer claimed that informing his second line supervisor, Hammock, of the office's need to formulate a policy regarding the opening of the pink envelopes, constituted a protected disclosure under the WPA. Notably, the record is devoid of any evidence that any secretary had actually improperly viewed any grand jury material. Even if a secretary had actually read grand jury material, Langer fails to point to any federal rule that renders the action a violation.

The administrative judge determined that Langer failed to allege a violation of law, rule, or regulation for Disclosures 3, 4, and 5. Thus, the administrative judge found a lack of reasonable belief by Langer that he had made a protected disclosure.

Additionally, the administrative judge found that Langer himself was in the position to remedy the alleged wrongdoing. It

was Langer's responsibility to ensure compliance with his own policy regarding pink envelopes. As a result, the administrative judge found that Langer had failed to establish a violation of the WPA with regard to Disclosures 3, 4, and 5.

### Disclosure 6

Disclosure 6 relates to proper performance appraisal procedures at the IRS. Langer testified concerning his refusal to give a secretary a performance rating without the secretary having received proper notification of the criteria on which her performance would be evaluated. The administrative judge determined that because Langer had failed to exhaust administrative remedies before the Office of Special Counsel ("OSC"), he had failed to state a claim as to Disclosure 6.

### Disclosure 7

Disclosure 7 relates to alleged wrongdoings in the CID. Langer testified that memoranda he had drafted in 1994, disclosing wrongdoings in the CID, constituted a protected disclosure under the WPA. The administrative judge determined that because Langer had failed to exhaust administrative remedies before the OSC, he had failed to state a claim as to Disclosure 7.

Having found that Langer's disclosures were not protected under the WPA, the administrative judge issued an initial order dismissing Langer's IRA appeal for lack of jurisdiction. The full Board denied Langer's petition for a review of the administrative judge's initial decision, which therefore became the final decision of the Board. Langer then timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

### DISCUSSION

A decision by the Board cannot be overturned unless it is found to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *see Fernandez v. Dep't of Army,* 234 F.3d 553, 555 (Fed.Cir.2000).

### Applicable Standards of Proof

The administrative judge bifurcated this case, requiring Langer to establish MSPB "jurisdiction" by a preponderance of the evidence before considering the IRS' affirmative defenses. Langer contends that the Board applied an incorrect standard of proof as a result of its bifurcation of the case. He argues that in order to establish a prima facie case in a bifurcated proceeding, he need only present non-frivolous allegations. Langer thus contends that the Board committed reversible error when it required him to meet the higher preponderance of the evidence standard. We disagree.

 We have previously held that,

to prevail in [an] IRA appeal, [appellant must] demonstrate by a preponderance of the evidence that he made a disclosure that he reasonably believed evidenced a violation of a law, rule, or regulation.

*Meuwissen v. Dep't of Interior,* 234 F.3d 9, 12 (Fed.Cir.2000) (citing *Willis v. Dep't of Agric.,* 141 F.3d 1139, 1143 (Fed.Cir.1998)). The bifurcated nature of this case does not change the standard of proof required to make a prima facie showing of a protected disclosure under 5 U.S.C. § 2302(b)(8).

 Langer's confusion regarding the correct standard of proof stems from an issue that this court has addressed in the past. *See Spruill v. Merit Sys. Prot. Bd.,* 978 F.2d 679 (Fed.Cir.1992). Although the Board stated that it was dismissing Lan-

ger's IRA appeal for "lack of jurisdiction," its disposition of this case is more appropriately characterized as a failure to state a claim upon which relief can be granted (i.e., Langer has failed to establish the required elements of his IRA appeal). *Id.* at 686–88. The correct characterization of the disposition by the Board is important because dismissal for lack of subject matter jurisdiction is predicated on a standard of proof that is different from the standard of proof applicable to dismissal for failure to state a claim upon which relief can be granted. The standard for establishing subject matter jurisdiction and the right to a hearing is assertion of a non-frivolous claim. *See id.* at 687 (quoting *Montana Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951)). The standard for establishing a prima facie case in an IRA appeal is preponderant evidence. *See Meuwissen*, 234 F.3d at 12.

■ Because Langer has asserted a non-frivolous claim, the MSPB had jurisdiction over his IRA appeal. Accordingly, the Board properly conducted a hearing to determine whether Langer had stated a claim upon which relief could be granted. Following the hearing, the Board concluded that Langer had failed to prove a required factual element of his IRA appeal by the applicable preponderance of the evidence standard. Thus, the Board essentially found that Langer had failed to state a claim upon which relief could be granted.

The Board's characterization of its dismissal as being for "lack of jurisdiction" confuses the question of which standard applies. However, confusion regarding the characterization of the Board's reason for dismissal does not change the fact that the Board applied the correct "preponderance of the evidence" standard of proof to the question of whether Langer established a prima facie case under the WPA.

### Excluded Evidence

■ Langer further contends that the Board denied him due process by: (a) refusing to allow him to call witnesses that he contends were crucial to his rebuttal of the statements of IRS management; and (b) excluding from evidence an exhibit summarizing the racial breakdown of subjects of grand jury investigations during the years 1992 through 1995. Both contentions lack merit. We first note that the admissibility of evidence is within the sound discretion of the Board. *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 503 (Fed.Cir.1995). As to witness testimony, Langer provides us with no evidence that the administrative judge refused to allow him to call witnesses. Langer asserts that the testimony of two witnesses, J. Paul Knap and James E. Schacht, was necessary to rebut statements of IRS management. However, in addition to providing us with no evidence that the Board refused to allow him to call these witnesses, Langer's mere assertions that such testimony was crucial to rebut the statements of IRS management fails to persuade us that the Board abused its discretion in denying the testimony.

■ As to the excluded exhibit, it is clear from the record that the administrative judge excluded the exhibit because it presented the results of analyses that took place after the alleged protected disclosures were made. Therefore, it could not have been a basis for Langer's reasonable belief that he was making a protected disclosure. The inquiry into whether Langer's disclosures were protected under the WPA looks only to evidence that was available to Langer prior to the alleged protected disclosures. Langer does not allege that the exhibit was created before his alleged protected disclosures. On the record before us, we cannot say that it was an

abuse of discretion for the administrative judge to exclude the exhibit from evidence.

### The Whistleblower Protection Act

According to the WPA, a government official may not

> take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee ... because of ... any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8) (1994).

▮▮▮ To establish that a protected disclosure has been made under the WPA, Langer must establish that: (1) he had a reasonable belief that his disclosure was protected under the WPA; and (2) he identified a "specific law, rule, or regulation that was violated." *Meuwissen*, 234 F.3d at 13. However, disclosures of trivial violations do not constitute protected disclosures. *See Herman v. Dep't of Justice*, 193 F.3d 1375 (Fed.Cir.1999). The WPA's aim is to encourage reporting of a "genuine violation of law" rather than "minor or inadvertent miscues occurring in the conscientious carrying out of a federal official or employee's assigned duties." *Id.* at 1381.

### Disclosures 1 and 2

▮▮▮ The Board based its conclusion that Disclosures 1 and 2 are not protected under the WPA on a number of findings. First, the Board found that Langer had failed to disclose a violation of law, rule, or regulation. *Langer*, slip op. at 6. We do not agree. The Board stated: "If Appellant had told the [AUSAs] that more African-Americans were being investigated because [sic] CID [was] engaging in selec-

tive prosecution, that might be a disclosure." *Id.* While our precedent makes clear that protection under the WPA requires that an employee identify a "specific law, rule, or regulation that was violated," *Meuwissen*, 234 F.3d at 13, we hold that this requirement does not necessitate the identification of a statutory or regulatory provision by title or number, when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation. In this case, Langer's mentioning to the AUSAs and his supervisor that he believed there was a problem with a disproportionately high number of African Americans being prosecuted clearly implicated the question of selective prosecution and sufficiently raised possible violations of civil rights to constitute a protected disclosure.

Langer made Disclosure 1 to three AUSAs, and made Disclosure 2 to his supervisor. The Board determined that the persons "with authority to remedy" the wrongdoing at issue were the Inspector General and the District Director. Relying on *Horton v. Dep't of Navy*, 66 F.3d 279, 282 (Fed.Cir.1995), the Board found that Langer did not make Disclosures 1 and 2 "to persons with authority to remedy such wrongdoing." *Langer*, slip op. at 7. However, the Board's analysis reads too much into *Horton*, which involved an employee whose alleged protected disclosures were made "directly to the persons about whose behavior Mr. Horton complained." *Id.* This court held that "[c]riticism directed to the wrongdoers themselves is not normally viewable as whistleblowing." *Id.* Thus, the Board erred in interpreting *Horton* to require identification of the persons with authority to remedy the wrongdoing, and proof by Langer that he had made his protected disclosures to those persons. This follows our recent holding in *Huffman v. Office of Pers. Mgmt.*, No. 00–3184,

2001 WL 914869, at *6–7 (Fed.Cir. Aug.15, 2001).

The Board also held, relying on *Willis*, 141 F.3d at 1144, that Disclosures 1 and 2 were not protected disclosures because they were required as part of Langer's normal job function. *Langer*, slip op. at 7. In *Willis*, we held that "determining whether or not farms were out of compliance was part of his job performance ... and cannot itself constitute a protected disclosure under the WPA." *Id.* We have recently described the scope of this rule in *Huffman*, 2001 WL 914869, at *7–11. In this case, the Board found that Langer, in responding to the AUSAs' concerns that they might have a problem presenting their case, was merely carrying out his required, everyday job responsibilities. *Id.* We agree and conclude that the Board was correct in holding that Disclosures 1 and 2 were not protected under the WPA.

### Disclosures 3, 4, and 5

 We agree with the Board that Langer failed to make protected disclosures under the WPA with respect to Disclosures 3, 4, and 5. "[T]he WPA was enacted to protect employees who report genuine violations of law, not to encourage employees to report minor or inadvertent miscues occurring in the conscientious carrying out of a federal official or employee's assigned duties." *Herman*, 193 F.3d at 1380. Disclosures 3, 4, and 5 were minor miscues occurring in otherwise conscientious performance of duties within the IRS. Thus, Disclosures 3, 4, and 5 are not the type of disclosures intended for protection by the WPA.

At most, Disclosures 3, 4, and 5 evidence disagreements Langer had with his superiors regarding the formal policy for handling of the pink envelopes that might contain confidential grand jury information. This is not the kind of disclosure the

WPA was designed to encourage or protect. *Id.*

In *Herman*, we noted that Dr. Herman's alleged agency wrongdoings, the copying of confidential information, was at most inadvertent. *Id.* at 1381. In addition, Dr. Herman was not able to prove the actual copying of any confidential information. *Id.* As a result, we held that "the action by the agency was of such a trivial nature that Dr. Herman could not have reasonably believed that the agency was violating a law, rule, or regulation within the meaning of the WPA." *Id.* Similarly, Langer was unable to prove that a secretary had actually improperly viewed any grand jury material, and any actual viewing of grand jury material by a secretary would at most have been inadvertent. Moreover, the alleged violation concerned a rule not adopted by the agency, but rather a procedure personally established by Langer as an exception to general agency procedures regarding the handling of the pink envelopes. Thus, Langer could not have had a reasonable belief that a secretary's opening of pink envelopes amounted to a violation of law, rule, or regulation within the meaning of the WPA.

Because Langer, with respect to Disclosures 3, 4, and 5, only reported minor and inadvertent miscues occurring in the conscientious carrying out of a federal employee's assigned duties, the Board was correct in concluding that Disclosures 3, 4, and 5 were not protected under the WPA.

### Disclosures 6 and 7

 With respect to Disclosures 6 and 7, we agree with the Board that Langer failed to exhaust his administrative remedies at the OSC. A petitioner must seek corrective action before the OSC as a prerequisite to filing an IRA appeal to the MSPB. 5 U.S.C. §§ 1214(a)(3), 1221(a), (b) (1994); *Ellison v. Merit Sys. Prot. Bd.*, 7

F.3d 1031, 1035 (Fed.Cir.1993). Further, the petitioner must make allegations with sufficient detail to the OSC. *See id.* "[T]he test of the sufficiency of an employee's charges of whistleblowing to the OSC is the statement that the employee makes in the complaint requesting corrective action under 5 U.S.C. § 1214, not the employee's post hoc characterization of those statements." *Id.* at 1036 (citation omitted).

 Langer insists that he satisfied the specificity requirement in his complaint to the OSC. However, Langer failed to point to any evidence to substantiate his claim. The IRS contends that substantial evidence supports the Board's determination that Langer had failed to exhaust his administrative remedies at the OSC level. The IRS notes that Disclosure 6 was reported to the OSC as a wrongful personnel action rather than a protected disclosure under the WPA. The IRS further notes that Langer, with overly broad and vague language, failed to put the OSC on notice of the specific violations he currently alleges under Disclosure 7. In his initial filing with the OSC, Langer simply stated "disclosure of wrongdoing in the criminal investigation division."

Because Langer failed to specify to the OSC that Disclosure 6 was a WPA action, and failed to give sufficient details regarding Disclosure 7, we conclude that the Board was correct in finding that Langer had failed to exhaust his remedies at the OSC level with respect to these disclosures.

## CONCLUSION

Because the Board correctly applied a preponderance of the evidence standard, and correctly determined that Langer had failed to prove by a preponderance of the

evidence that he had made a protected disclosure under the WPA, we affirm.

*AFFIRMED.*