# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| AGNES C. COLLIER,<br>　　　　　　Appellant, | DOCKET NUMBER<br>CH-1221-14-0520-W-1 |
| 　　　　v. | |
| DEPARTMENT OF VETERANS<br>　AFFAIRS,<br>　　　　　　Agency. | DATE: November 30, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Denise M. DeBelle</u>, Esquire, and <u>Tim Huizenga</u>, Chicago, Illinois, for the
　　appellant.

<u>Robert Vega</u>, Esquire, Hines, Illinois, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1　　　The appellant has filed a petition for review of the initial decision, which denied her request for corrective action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant, a Certified Nursing Assistant (CNA) at the agency's Jesse Brown Medical Center, alleged in this individual right of action (IRA) appeal that the agency terminated her on July 5, 2012, during her 1-year probationary period, in retaliation for making protected whistleblowing disclosures regarding a patient. Initial Appeal File (IAF), Tab 1. As set forth in the initial decision, on March 6, 2012, the patient underwent a Chronic Total Occlusion Recanalization procedure, which involved the insertion of catheters in his right radial and femoral arteries, after which he was reported as fully awake, alert, and oriented. IAF, Tab 44, Initial Decision (ID) at 2; IAF, Tab 35 at 32, 34, 38. Because of the need to limit his movement, he was transferred to the telemetry unit around 3:15 p.m. in the same sheets and gown used in the procedure. ID at 3; IAF, Tab 36 at 31-32. As a result, there was dried blood on him when he arrived. ID at 3; IAF, Tab 42, Nov. 20, 2014 Hearing Transcript (HT-1) at 19-20, Tab 43, Nov. 21, 2014 Hearing Transcript (HT-2) at 475-76. A Registered Nurse (RN) who assumed the patient's care at that point also reported

that the patient was awake, alert, oriented, and had no bleeding or hematoma at the site of either catheterization as of 4:12 p.m.  ID at 3; IAF, Tab 36 at 32-34.

¶3        The appellant also was assigned to the telemetry unit and had begun her duty there at 3:30 p.m. that day.  HT-1 at 16.  A shift change occurred soon afterwards and a different RN, who was a nursing preceptor accompanied by a student nurse, took over responsibility for the patient's care.  HT-2 at 468, 506‑08; IAF Tab 36 at 36.  Under that RN's guidance, the student nurse documented the patient's status and progress, noting that he remained stable, alert, and oriented, and reporting that he had experienced no pain or hematoma at the catheterization sites as of 4:43 p.m.  IAF, Tab 36 at 35-37.

¶4        The patient experienced some bleeding in the early evening hours, around the time that a third RN took over the patient's care in the telemetry unit.  ID at 4-5; HT-1 at 19; HT-2 at 368, 370-71, 382-83.  Although the administrative judge noted that the parties did not agree on who discovered the bleeding or even who provided the medical care to address it, notes entered by that third RN indicate that she successfully addressed the condition, applying pressure to the site to stop the moderate bleeding, notifying the doctor, and keeping close observation of the site of the bleeding.  ID at 4-5 & n.4; IAF, Tab 30 at 93; HT-1 at 19, 22-23; HT-2 at 381-87.  The patient was released the next day in stable condition with no complaints of pain or discomfort.  ID at 5; IAF, Tab 30 at 94.  On March 8, 2012, the appellant gave her superior a VA Form 119, Report of Contact (ROC) alleging that she reported to a nurse on March 6, that the patient "was left in dried blood."  IAF, Tab 29 at 10.  The nurse reportedly responded that "nothing [would] be done about it."  *Id.*

¶5        After holding a hearing, the administrative judge issued an initial decision in which he denied corrective action, explaining his decision with a comprehensive review of both the testimonial and documentary evidence before him.  ID.  He found that the appellant nonfrivolously alleged that she made a protected disclosure when she purportedly told her supervisor that she had

discovered a patient unattended and bleeding from an incision to his femoral artery, and that she reasonably believed that the failure of an RN on duty to provide any medical care constituted a substantial and specific danger to that patient's health and safety. ID at 13. He further found that the appellant nonfrivolously alleged that her disclosure was a contributing factor in the agency's decision to terminate her less than 5 months into her 1-year probationary period, and also found that she had exhausted her administrative remedies before the Office of Special Counsel (OSC) as to that disclosure and personnel action, establishing jurisdiction over her IRA appeal. ID at 10, 13-14.

¶6    However, the administrative judge found that the appellant failed to establish by preponderant evidence that a disinterested observer, with knowledge of the essential facts known to and readily ascertainable by the appellant, could reasonably conclude that her disclosure that a patient was left in dried-up blood following a cardiac catheterization, and that an RN on duty refused to help and told her not to complain because nothing would be done, revealed a substantial and specific danger to public health and safety within the meaning of 5 U.S.C. § 2302(b)(8)(A)(ii). ID at 15-25.

¶7    In her petition for review, the appellant asserts that the administrative judge improperly overlooked disclosures she allegedly made on March 6 and 8, 2012, regarding the patient's care, analyzing only the March 8 ROC. Petition for Review (PFR) File, Tab 1 at 7-9; IAF, Tab 31 at 13-16. She also contends that the administrative judge should have examined these disclosures together with the March 8 ROC because disclosures like these "could come in separate pieces rather than one tidy package" and asserting that such a disclosure should be sufficient if the pieces, taken together, serve to apprise the agency of a substantial and specific danger to public safety. PFR File, Tab 1 at 9‑10. The appellant further asserts that the patient did not receive the care required by agency protocols and that, under such circumstances, she had a reasonable belief of a substantial and specific danger to that patient. *Id.* at 10-15. In similar fashion,

she argues that her assertion that an RN allegedly refused to care for the patient because the patient was not his responsibility also established a substantial and specific danger. *Id.* at 12-13. She insists that the patient was not just lying in dried blood and smoothly recovering from his cardiac catheterization, but was instead actively bleeding, and she argues that under a proper recitation of the facts, her disclosures were protected. *Id.* at 15-17. The agency responds in opposition to the appellant's petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8 Federal agencies are prohibited from taking, failing to take, or threatening to take or fail to take, any personnel action against an employee in a covered position because of the disclosure of information that the employee reasonably believes to be evidence of a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(a)(2), (b)(8). To establish a prima facie case of whistleblower reprisal, the employee must prove, by preponderant evidence, that she made a protected disclosure and that the disclosure was a contributing factor in a personnel action taken against her. 5 U.S.C. § 1221(e)(1); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 12 (2015).

¶9 The proper test for determining if an employee had a reasonable belief her disclosure revealed misconduct described in 5 U.S.C. § 2302(b)(8) is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the Government evidenced wrongdoing as defined by the Whistleblower Protection Act (WPA). *Chambers v. Department of the Interior*, 602 F.3d 1370, 1379 n.7 (Fed. Cir. 2010). Here, the appellant alleged that her disclosures were of a danger to public health and safety. IAF, Tab 5 at 17. The inquiry into whether an appellant disclosed danger that is sufficiently substantial and specific to warrant

finding that it is protected whistleblowing "is guided by several factors, among these: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences." *Chambers*, 602 F.3d at 1376.

The appellant established jurisdiction over her IRA appeal but failed to prove her claim on the merits.

¶10  In an IRA appeal, the standard for establishing jurisdiction and the right to a hearing is an assertion of a nonfrivolous allegation, while the standard for establishing a prima facie case is that of preponderant evidence. *Langer v. Department of the Treasury*, 265 F.3d 1259, 1265 (Fed. Cir. 2001). We agree with the administrative judge that the appellant proved OSC exhaustion and made the requisite nonfrivolous allegations to establish jurisdiction over her IRA appeal, which involved potentially serious issues of patient neglect, which warranted a hearing on her whistleblowing claims.[2] ID at 8-14. As discussed below, we also agree with his ultimate conclusion that, based on the evidence of record and the testimony before him, it was not credible that a disinterested observer in the appellant's position, a seasoned health care professional with 16 years of experience as a CNA, would consider the fact that this patient was lying in dried blood following a cardiac catheterization constituted a substantial and specific danger to the patient's health and safety. ID at 24-25. The record reflects that the patient required complete immobilization following the catheterization procedure, precluding a change in his blood-stained gown and sheets, and that the RNs charged with the patient's care at the time of the appellant's observation fulfilled their obligations, resulting in the patient's discharge the next day with no complaints of pain or discomfort. After our

---

[2] The administrative judge found that the appellant failed to establish jurisdiction over any additional alleged disclosures. ID at 10 n.9, 12-13. The parties do not challenge those findings on review, and we decline to disturb them.

thorough review of this evidence, we affirm the administrative judge's well‑reasoned decision to deny the appellant's request for corrective action.

<u>The administrative judge made a proper credibility-based factual finding that the appellant's March 8, 2012 Report of Contact was the most credible iteration of her disclosure.</u>

¶11    In the initial decision, the administrative judge provided a comprehensive summary of the record pertaining to the appellant's disclosures, including her March 6, 2012 conversation with an RN regarding the patient, her March 8 conversation with her superior, and the March 8 ROC.  ID at 17-20.  Based on the documentary evidence in the record and hearing testimony, he found that the March 8, 2012 ROC, in which the appellant disclosed to her supervisor that a patient had been left in dried blood and an RN had told her not to complain about it because nothing would be done, represented the extent of her disclosure, and he properly gave it significant weight.  ID at 17-18, 21-24; IAF, Tab 32 at 10; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (discussing the factors to be considered by an administrative judge in resolving credibility issues).  By contrast, he found no probative value in the appellant's two purported prior disclosures.  ID at 21-24.  He observed that the record contained little evidence to support her testimony that she had left a written report regarding the patient under her supervisor's door on March 6, in large part because the appellant herself apparently destroyed the document, and her "vague, generalized assertions" failed to show that she had made a disclosure when speaking with her supervisor on March 8.  ID at 17-19, 21; HT-1 at 26, 160-61.  He also accorded little weight to the appellant's subsequent characterizations of her disclosures, finding them neither reliable nor probative, noting the vast difference between her post-hoc statements and the ROC, and citing her incentive to over-dramatize those later statements in order to invoke the protections of the WPA.  ID at 22-23.

¶12    The Board must defer to an administrative judge's credibility determinations when, as here, they are based on the observation of the demeanor

of witnesses testifying at a hearing. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Thus, we defer to the administrative judge's finding that the appellant's characterization in the March 8, 2012 ROC, in which she described the patient as "left in dried up blood," was more credible than the later iteration set forth in her September 19, 2012 OSC complaint that the patient was instead "bleeding profusely." IAF, Tab 5 at 17, 20, Tab 29 at 10. Contrary to the appellant's assertions on review, the administrative judge explicitly considered the appellant's alleged disclosures on March 6 and 8, 2012, but found her testimony insufficient to establish that she had made a disclosure therein. PFR File, Tab 1 at 7-10; ID at 17-19, 21. The ROC was entitled to significant weight, in large part because of its contemporaneous nature. ID at 22‑23; *see Hillen*, 35 M.S.P.R. at 458. Thus, not only does the record reflect that the administrative judge gave each of the appellant's asserted disclosures its proper consideration, the initial decision also reflects that he considered her allegations as a whole, noting the change of the tone of her assertions over time and drawing his conclusions from the entirety of the record. Most importantly, this finding is consistent with the evidence and testimony before the administrative judge, which established that the patient was laying in dried blood due to the critical need for him to remain still to control his bleeding following the catheterization procedure. Thus, as the following discussion indicates, we reject the appellant's post-hoc characterization, which she repeats on review, that the patient was actually in danger. PFR File, Tab 1 at 15-17.

The record reflects that, contrary to the appellant's contentions, the patient received proper care under the circumstances.

¶13    The appellant also alleges that the agency violated its own protocols when the patient's vital signs were not taken for 4 hours on March 6, 2012. PFR File, Tab 1 at 10-12; *see* 5 U.S.C. § 2302(b)(8)(A)(i) (designating disclosures of violations of law, rule, or regulation as protected). However, the record reflects

that the patient who was the subject of the appellant's purported disclosures received care consistent with the agency's standard of care. ID at 2-5.

¶14 The agency presented evidence that it was appropriate for the patient to be lying in dried blood following a cardiac catheterization due to the obvious and acute need to leave him in place following the procedure to minimize further bleeding from the catheterization sites. In addition, the patient's progress notes show that the agency continuously monitored him and that the one period of subsequent bleeding he experienced was properly addressed by the RN who was responsible for his care when it occurred. ID at 3-5; IAF, Tab 30 at 93, Tab 35 at 6-11, Tab 36 at 32-52. Under that circumstance, the refusal of a different RN to take responsibility for the patient's care does not seem unreasonable. Moreover, regardless of who discovered that the patient was bleeding, the documentary evidence confirms the RN's testimony that she stanched the bleeding and continued to observe the patient until his vital signs and blood pressure returned to normal and everything was stable. HT-2 at 381; IAF, Tab 30 at 93. As noted above, the record confirms that the patient was released the next day in stable condition with no complaints of pain or discomfort. IAF, Tab 30 at 94.

¶15 Accordingly, we affirm the administrative judge's decision to deny corrective action in this matter.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory

deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:               _____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.