**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JENNIFER M. URQUIDI, | DOCKET NUMBER |
| Appellant, | DA-1221-19-0401-W-2 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: August 15, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Carson Bridges, Esquire, and Morgan Velasquez, Esquire, Dallas, Texas, for the appellant.

Russell Wardlow and Samantha Pistol, El Paso, Texas, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which denied her individual right of action (IRA) appeal on the merits. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

Prior to the events at issue in this appeal, the appellant was employed as Staff Assistant to the Chief Patrol Agent (CPA) of the El Paso Sector, U.S. Border Patrol. *Urquidi v. Department of Homeland Security*, MSPB Docket No. DA-1221-19-0401-W-2, Appeal File (W-2 AF), Tab 21 at 4 (stipulation 1).[2] The agency admits that, on several occasions between January and May 2018, the appellant witnessed two District Chiefs (DC1 and DC2) engaging in what she described in her complaint to the Office of Special Counsel (OSC) as "lewd, disgusting, and inappropriate conduct" in the office, such as slapping each other on the buttocks, pouring water on each other's pants, mocking the voice of a coworker, and showing the appellant a photo of DC2's excrement. W-2 AF, Tab 6 at 11, Tab 9 at 9. At the time of the incidents, the appellant protested their behavior, making comments such as "you need to act like adults" and "you all are ridiculous." W-2 AF, Tab 9 at 9.

The appellant was subsequently involved in a dispute over the office dress code. On May 15, 2018, the Director of Policy and Compliance sent the appellant a draft of a proposed dress code policy to pass on to the CPA. *Id*. at 10. The draft policy included a prohibition against sleeveless attire. *Id*. After receiving the document, the appellant asked the CPA if he had issues with her or the Deputy CPA's Staff Assistant wearing sleeveless blouses, and the CPA indicated that he did not. *Id*.

The CPA was away from the office on May 16, 2018, and DC1 served as acting CPA in his absence. W-2 AF, Tab 21 at 5 (stipulation 10). On May 17, 2018, after the CPA returned to the office, DC1 informed the CPA that he and other management officials believed that the appellant had been leaking

---

[2] Under 5 C.F.R. § 1201.63, a stipulation is sufficient to prove the fact alleged. *Swift v. Office of Personnel Management*, 48 M.S.P.R. 441, 445 (1991).

confidential information by telling other employees that the CPA would not support the draft policy. W-2 AF, Tab 9 at 11. That same day, the CPA met with the appellant and expressed his displeasure that the appellant had, in his view, inappropriately shared information and not respected the chain of command. *Id*. at 220-21. The appellant denied that she was the source of the rumors. *Id*. at 220.

On May 18, 2018, the CPA filed a complaint with the Joint Intake Center (JIC) concerning the appellant's conduct. W-2 AF, Tab 21 at 5 (stipulation 14), Tab 23 at 101-02. The complaint alleged that the appellant misused her position as the CPA's Staff Assistant "to share sensitive information regarding a draft policy memorandum with non-managerial support staff in an apparent attempt to undermine management and influence [the CPA]'s decision." W-2 AF, Tab 23 at 101. As a result of the CPA's report to the JIC, the appellant was investigated for alleged abuse of her position. W-2 AF, Tab 21 at 5 (stipulation 16).

Also on May 18, 2018, the CPA decided to temporarily transfer the appellant to a Mission Support Specialist position with the Sector Intelligence Unit (SIU). W-2 AF, Tab 21 at 5 (stipulation 12), Tab 23 at 9. At the direction of the CPA, the appellant's access to Concur, a computerized travel system, was restricted on May 21, 2018. W-2 AF, Tab 21 at 5 (stipulation 19).

On May 25, 2018, the appellant filed her own report with the JIC. W-2 AF, Tab 9 at 210-15. In her report, she described the offensive behavior by DC1 and DC2, as well as her oral response to their antics. *Id*. at 210-11. She also reported to the JIC that the CPA had spoken to her in a "low, firm, intimidating" voice on May 17, 2018. *Id*. at 212. She alleged that DC1 had influenced the CPA's decision to reassign her, in an effort to keep her from reporting the inappropriate conduct by DC1 and DC2. *Id*. at 214-15. As a result of the appellant's JIC complaint, the agency conducted an investigation into the conduct of DC1 and DC2 and, on January 29, 2019, it issued them letters of reprimand, finding that

their conduct was in violation of an agency directive requiring professional workplace behavior. *Id*. at 36-41, 157-71.

Meanwhile, on June 5, 2018, the appellant met with an equal employment opportunity (EEO) counselor and alleged that she was discriminated against based on sex when (1) DC1 and DC2 subjected her to a hostile work environment; (2) the CPA reassigned her to SIU, allegedly at the prodding of DC1; and (3) she was treated differently from male employees who were detailed or reassigned, in that she was directed to turn in her laptop and keys and her access to hard drives was removed. *Id*. at 185-91. On August 4, 2018, the appellant filed a formal EEO complaint, based on the same allegations. *Id*. at 184-85.

In mid-August 2018, the appellant requested that her access to Concur be restored. *Id*. at 62 (declaration of the Personnel and Finance Director). Her request was denied at the direction of the CPA. *Id*. at 62-63. Subsequently, the appellant's request for access to COSS, a computerized payroll system, was also denied, again at the direction of the CPA. *Id*. at 63-64. The appellant subsequently amended her EEO complaint to further allege that the agency discriminated against her on the basis of sex, and in reprisal for EEO activity, when management denied her requests for access to Concur and COSS. *Id*. at 154-56.

In November 2018, the appellant was nominated for a cash award, but the Deputy CPA did not forward the nomination to the CPA for approval, and she did not receive a cash award for the year. W-2 AF, Tab 21 at 5-6. Meanwhile, in December 2018, the El Paso Sector received the completed report of investigation into the CPA's allegations against the appellant. *Id*. at 5 (stipulated fact 17). On December 13, 2018, the Deputy Chief of the El Paso Sector found that there was insufficient evidence to support an administrative action against the appellant, and the case was closed. *Id*. (stipulated fact 18). On December 17, 2018, the appellant sent a memorandum to the CPA requesting to return to her original position. W-2 AF, Tab 6 at 42. However, on February 8, 2019, the CPA issued a

memorandum making the appellant's transfer to SIU permanent, effective February 17, 2019. *Id*.

On February 11, 2019, the appellant filed a complaint with OSC. *Id*. at 7-12. In her complaint, she alleged that she had been harassed by DC1, DC2, and the CPA, and had suffered reprisal for "telling [DC1 and DC2] that their lewd, disgusting, and inappropriate conduct needed to stop." *Id*. On June 25, 2019, after more than 120 days had passed since she filed her OSC complaint, the appellant filed an IRA appeal. *Urquidi v. Department of Homeland Security*, MSPB Docket No. DA-1221-19-0401-W-1, Initial Appeal File (IAF), Tab 1. The appellant notified OSC of her intent to pursue the matter before the Board, and OSC issued a close-out letter on June 27, 2019. W-2 AF, Tab 6 at 19. The IRA appeal was dismissed without prejudice, and subsequently refiled. IAF, Tab 7, Initial Decision; W-2 AF, Tab 1.

Based on the parties' written submissions, the administrative judge found that the appellant had established jurisdiction over her IRA appeal and that she was therefore entitled to a hearing. W-2 AF, Tab 10 at 5. The administrative judge determined that the issues before the Board included the following disclosures and activities: (1) reporting inappropriate conduct by her supervisors in the form of protests to DC1 and DC2, and in her May 25, 2018 complaint to the JIC; and (2) filing an EEO complaint regarding harassment and reprisal. W-2 AF, Tab 27 at 2-3. The administrative judge also identified the following alleged retaliatory personnel actions:

1. Temporarily reassigning the appellant to [SIU] on or around May 18, 2018;

2. Denying the appellant administrative rights and access to [COSS] on or around September 13, 2018, and to [Concur] since August 15, 2018;

3. Denying the appellant a cash award in or around December 2018; and

> 4. Permanently reassigning the appellant to [SIU], effective February 17, 2019.

*Id*. at 3. The administrative judge conducted a hearing on November 21 and 22, 2019. W-2 AF, Tab 28.

On December 17, 2019, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-2 AF, Tab 29, Initial Decision (ID). The administrative judge found that the appellant's statements to DC1 and DC2 were not protected disclosures under § 2302(b)(8), but that her JIC complaint did constitute protected activity under § 2302(b)(9)(C). ID at 10-11. She further found that, because the appellant's EEO complaint did not allege a violation of § 2302(b)(8), it fell within the scope of § 2302(b)(9)(A)(ii), and thus was not within the scope of an IRA appeal. ID at 11-12. The administrative judge further found that, while the appellant's JIC report occurred after her temporary reassignment, and therefore could not have been a contributing factor in that action, it was a contributing factor in the remaining personnel actions, i.e., the denial of Concur and COSS access, the denial of a cash award, and her permanent reassignment. ID at 13-17. However, the administrative judge went on to find that the agency demonstrated by clear and convincing evidence that it would have taken the same actions in the absence of her JIC report. ID at 17-26.

The appellant has filed a timely petition for review. Petition for Review (PFR) File, Tab 3. On review, she argues that the administrative judge erred in finding that her statements to DC1 and DC2 were not protected disclosures under 5 U.S.C. § 2302(b)(8). *Id*. at 9-12. She further contends her disclosures to DC1 and DC2 about their unprofessional conduct were a contributing factor in her temporary reassignment, because DC1 influenced the CPA's decision to take that action. *Id*. at 13-14. Finally, she argues that the administrative judge erred in finding that the agency showed by clear and convincing evidence that it would have taken the contested actions in the absence of her protected disclosures and activities. *Id*. at 14-22. The agency has filed a response. PFR File, Tab 5.

**ANALYSIS**

<u>The Board lacks jurisdiction over the appellant's claims that the agency retaliated against her for filing the JIC report and EEO complaint.</u>

As an initial matter, we address the issue of the Board's jurisdiction over the appellant's claims of retaliation for filing her JIC report and EEO complaint. The issue of the Board's jurisdiction is always before the Board and may be raised by either party or sua sponte by the Board at any time during a Board proceeding. *Simnitt v. Department of Veterans Affairs*, 113 M.S.P.R. 313, ¶ 5 (2010).

The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion through their initial OSC complaint; evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and their written responses to OSC referencing the amended allegations. *Id.* Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.* To establish Board jurisdiction, the appellant must prove exhaustion with OSC by preponderant evidence, not just present nonfrivolous allegations of exhaustion. 5 C.F.R. § 1201.57(c)(1).

In her response to the jurisdictional order, the appellant provided a copy of her OSC complaint, in which she alleged that she had been harassed by DC1, DC2, and the CPA, and had suffered reprisal for "telling [DC1 and DC2] that their lewd, disgusting, and inappropriate conduct needed to stop." W-2 AF, Tab 6

at 7-12. However, the OSC complaint makes no reference to her JIC report or EEO complaint.[3] *See id*. Moreover, the appellant explicitly stated in her response to the jurisdictional order that she did not file any amendments to her original OSC complaint. *Id*. at 5. In light of the above, we conclude that the appellant did not show by preponderant evidence that she exhausted her remedies with OSC with respect to her claims of reprisal for the JIC report and EEO complaint.[4] Because we lack jurisdiction over these claims, we vacate the portions of the initial decision that addressed them on the merits.

The appellant's oral protests to DC1 and DC2 were protected disclosures under 5 U.S.C. § 2302(b)(8).

We next turn to the appellant's remaining claim, i.e., that she was retaliated against for protesting the conduct of DC1 and DC2. To prevail on the merits in an IRA appeal alleging retaliation for protected disclosures, the appellant must establish a prima facie case of retaliation by proving by a preponderance of the evidence[5] that she made a protected disclosure that was a contributing factor in a personnel action taken against her. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e)(1). If the appellant makes out a prima facie case, then the agency is provided the opportunity to prove, by

---

[3] In subsequent email correspondence with the OSC investigator, the appellant mentioned her EEO complaint and provided a copy of her JIC report, both of which contain many of the same allegations set forth in her original OSC complaint. *Id*. at 21-22. Again, however, the appellant did not allege that the agency retaliated against her for either the EEO complaint or the JIC report. *See id*.

[4] Even if the appellant had exhausted her OSC remedies with respect to the EEO complaint, the matter would still lie outside the Board's IRA jurisdiction, because the EEO complaint did not seek to remedy a violation of § 2302(b)(8), and thus is not protected activity under § 2302(b)(9)(A)(i). *See Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013).

[5] Preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

clear and convincing evidence,[6] that it would have taken the same personnel action in the absence of the protected disclosures. 5 U.S.C. § 1221(e)(2); *Mastrullo*, 123 M.S.P.R. 110, ¶ 12.

To establish that she made a protected disclosure, the appellant must demonstrate by preponderant evidence that she disclosed information that she reasonably believed evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 13 (2013). Here, the administrative judge found that the appellant failed to show that her statements to DC1 and DC2 were protected, because "her expressions of disgust did not convey any *information*." ID at 9. The administrative further found that the appellant "did not identify any law, rule, or regulation that she believed [DC1] and [DC2] violated," and that her statements did not report information that a reasonable person would believe evidenced gross mismanagement or an abuse of authority. *Id*. Accordingly, she concluded that the appellant's statements to DC1 and DC2 did not constitute protected disclosures. *Id*.

We disagree with the administrative judge's finding that the appellant's statements to DC1 to DC2 did not convey information. The appellant unmistakably conveyed to DC1 and DC2 that their behavior was unprofessional and inappropriate for the workplace ("you need to act like adults"). Moreover, it is irrelevant that DC1 and DC2 were already aware of their own behavior. The Whistleblower Protection Act, as amended by the Whistleblower Protection Enhancement Act of 2012, specifically provides that disclosures are not disqualified from protection because they were made to a person who participated in the activity that is the subject of the disclosure, or because the disclosure revealed information that had previously been disclosed. 5 U.S.C. § 2302(f)(1)

_____

[6] Clear and convincing evidence is that measure or degree of proof that produces in the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e).

(A)-(B); *see Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶ 18 (2013).

Furthermore, we find that the appellant's statements to DC1 and DC2 disclosed information that she reasonably believed evidenced a violation of law, rule, or regulation.[7]   Ordinarily, to make a protected disclosure of a law, rule, or regulation, an employee must identify the specific law, rule, or regulation that was violated.  *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001).   However, an individual need not identify a statutory or regulatory provision by a particular title or number "when the statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation."  *Id*.  As the agency itself noted in the letters of reprimand it issued to DC1 and DC2, their conduct was plainly in violation of a specific, numbered agency directive requiring that employees "will be professional in their contact with supervisors, subordinates, co-workers, and members of the public."  W-2 AF, Tab 9 at 36, 39-40.  Accordingly, we conclude that the appellant's statements to DC1 and DC2 were protected disclosures under § 2302(b)(8).

The appellant's disclosures to DC1 and DC2 were a contributing factor in all of the contested personnel actions, including her temporary assignment.

Having found that the appellant's statements to DC1 and DC2 were protected disclosures, we next inquire whether they were a contributing factor in the contested personnel actions.   The term "contributing factor" means any

---

[7] We agree with the administrative judge that the appellant did not disclose information that a reasonable person would believe evidenced an abuse of authority or gross mismanagement.  *See Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 11 (2011) (stating that an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons); *see also Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008) (stating that gross mismanagement means a management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission).

disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual making the disclosure. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016). The most common way of proving the contributing factor element is the "knowledge/timing test." *Id*. Under that test, an appellant can prove that her disclosure was a contributing factor in a personnel action through evidence that the responsible agency official knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that a disclosure was a contributing factor in a personnel action. *Id*.; *see* 5 U.S.C. § 1221(e)(1).

An appellant may satisfy the knowledge prong of the knowledge/timing test by proving that the official taking the action had constructive knowledge of the protected disclosure, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). One way of establishing constructive knowledge is to show that an individual with actual knowledge influenced the official accused of taking the retaliatory action. *Id*. In an IRA appeal, the party before the Board is the agency, not its individual officials, and lack of knowledge by a particular official is not dispositive. *Id*.

As noted above, it is undisputed that, on May 17, 2018, the day before the appellant's temporary reassignment, DC1 informed the CPA that he and other management officials believed that the appellant was the source of rumors concerning the dress code. Thus, the CPA had at least constructive knowledge of the appellant's disclosures to DC1 and DC2 when he temporarily reassigned the appellant, based in part on DC1's allegation. Similarly, for the same reasons, the CPA had at least constructive knowledge of the appellant's disclosures when he later denied her requests for Concur and COSS access and made the reassignment permanent. The record also reflects that the Deputy CPA received the results of the investigation into the appellant's JIC complaint before he made the decision not to forward her nomination for a cash award. Hearing Recording (testimony of Deputy CPA). Thus, he would have been aware of the appellant's disclosures to

DC1 and DC2, which were referenced in the report of investigation.  *See* W-2 AF, Tab 9 at 159, 167 (noting the appellant's statement that she and another coworker "expressed their disgust" to DC1 and DC2).  Furthermore, all of the contested personnel actions were close enough in time to the appellant's protected disclosures that a reasonable person could conclude that the disclosures were a contributing factor in those actions.  *See* 5 U.S.C. § 1221(e)(2); *see also Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010) (finding that a personnel action taken within approximately 1 to 2 years after the protected disclosure satisfies the timing component of the knowledge/timing test).  Thus, we find that the appellant has met her burden of showing that her protected disclosures to DC1 and DC2 were a contributing factor in all of the contested personnel actions.

We remand the case to the regional office.

The remaining question to be decided is whether the agency has shown by clear and convincing evidence that it would have taken the contested actions absent the appellant's protected disclosures to DC1 and DC2.  In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action absent the protected activity, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[8]  The Board considers all of the evidence, including

---

[8] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of

evidence that detracts from the conclusion that the agency met its burden. *Soto*, 2022 MSPB 6, ¶ 11; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

The administrative judge is in the best position to conduct the required analysis, because she is the one who heard the live testimony and made credibility determinations. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013). We therefore remand the case to the regional office for the administrative judge to assess the *Carr* factors and determine whether the agency would have taken the contested actions absent the appellant's disclosures to DC1 and DC2. *See id*., ¶¶ 37-38. We stress that, in considering the second *Carr* factor, the Board will consider not only any retaliatory motive to retaliate on the part of the agency official who ordered the action, but also any motive to retaliate on the part of other agency officials who influenced the decision. *McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 62 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012); *see Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 29 (2014) (finding that the evidence reflected a motive on the part of the agency to retaliate, especially in light of the appellant's supervisor's role in reporting the appellant's alleged misconduct). Accordingly, on remand, the administrative judge should consider any evidence of retaliatory motive on the part of DC1, or DC2, if he also influenced any of the contested personnel actions. *See Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 20 (2013).

---

appeals of competent jurisdiction. *See* 5 U.S.C. § 7703(b)(1)(B). Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.