# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

SHERRILL A. CARVALHO,
      Appellant,

      v.

DEPARTMENT OF JUSTICE,
      Agency,

      and

OFFICE OF SPECIAL COUNSEL
      Intervenor.[1]

DOCKET NUMBER
SF-1221-15-0208-W-2

DATE: January 10, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[2]

Adam Herzog, Esquire, Avi Kumin, Esquire, and Colleen Coveney, Esquire, Washington, D.C., for the appellant.

Carol L. Shea, Esquire, Charles M. Kersten, Esquire, and Evan Harry Perlman, Washington, D.C., for the agency.

Wojun Lee, Esquire, and Joseph E. Siegelman, Esquire, Oakland, California, for the intervenor.

Henry J. Kerner, Washington, D.C., for the intervenor.

---

[1] The Special Counsel, pursuant to 5 U.S.C. § 1212(c)(2) and 5 C.F.R. § 1201.34(b)(2), moved to intervene in this case as a matter of right upon obtaining the consent of the appellant. *Carvalho v. Department of Justice*, MSPB Docket No. SF-1221-15-0208-W-1, Initial Appeal File (IAF), Tab 4. The administrative judge granted the motion. IAF, Tab 9.

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

**FINAL ORDER**

¶1　　The appellant and the intervenor have filed petitions for review, and the agency has filed a cross petition for review of the initial decision, which denied the appellant's request for corrective action in this individual right of action (IRA) appeal.  Generally, we grant petitions such as these only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the parties have not established any basis under section 1201.115 for granting the petitions or cross petition for review.  Therefore, we DENY the petitions for review filed by the appellant and intervenor and the cross petition for review filed by the agency and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

**BACKGROUND**

¶2　　The appellant, a former Assistant United States Attorney (AUSA), filed a timely IRA appeal alleging that she made protected disclosures that were

contributing factors in the agency's actions to place her on a performance improvement plan (PIP), to propose her removal for performance reasons, and to issue a removal decision letter based on those performance reasons. *Carvalho v. Department of Justice*, MSPB Docket No. SF-1221-15-0208-W-1, Initial Appeal File (IAF), Tab 1 at 10, 64, 68.[3] The appellant asserted that she made protected disclosures to an attorney with the agency's Professional Responsibility Advisory Office (PRAO) and to her second-level supervisor, informing them that a fellow AUSA may have had an ethical obligation to report to the judge in a criminal case the fellow AUSA's knowledge of ex parte contacts that occurred between defense counsel in the trial and an alternate juror but had not done so and was not inclined to do so. *Id.* at 10, 62, 64; IAF, Tab 55 at 6.

¶3   After a hearing, the Board's administrative judge denied the appellant's request for corrective action. *Carvalho v. Department of Justice*, MSPB Docket No. SF-1221-15-0208-W-2, Appeal File (W-2 AF), Tab 25, Initial Decision (ID) at 2, 36. The administrative judge found that, after a guilty verdict in the criminal trial at issue, the jury informed the fellow AUSA who prosecuted the case that defense counsel had made an alternate juror uncomfortable by making such comments to her outside of the courtroom as, "Do you have the time?" or "You don't mind if I share this elevator?" ID at 5. The administrative judge found that, after the fellow AUSA later mentioned the juror contact issue and other misbehavior of defense counsel to colleagues, including the appellant, during a hallway conversation at work, the appellant worried that she might have

---

[3] The agency issued a January 12, 2009 decision letter effecting the appellant's removal upon receipt of the letter. IAF, Tab 11 at 26, 34. Nevertheless, the agency retroactively reinstated the appellant and placed her on administrative leave pending the intervenor's investigation of her whistleblower complaint. IAF, Tab 24 at 1-2, Tab 42 at 23. Effective May 23, 2009, the agency terminated the appellant's appointment pursuant to 5 C.F.R. part 715, which covers voluntary separations such as resignations. IAF, Tab 11 at 24. Effective May 24, 2009, the appellant was appointed to an Attorney-Advisor position with the Social Security Administration, *id.* at 22, where she later served as an administrative law judge, IAF, Tab 42 at 23; Hearing Transcript (HT) at 282 (testimony of the appellant).

a personal duty as an officer of the court to report the ex parte juror contact to the judge in the case. ID at 6-7. The administrative judge noted that, after the appellant contacted the PRAO attorney and her second-level supervisor, PRAO ultimately contacted higher-level management and informed them that, depending on the context, the prosecutor "could have a duty to report that contact to the court." ID at 7-9. After the Professional Responsibility Officer at the U.S. Attorney's Office was consulted and recommended disclosing the contact to the court, the prosecutor did so; the judge in the criminal case, however, took no further action. ID at 9-10.

¶4 The administrative judge found that the appellant was not aware of the existence of any applicable California Rule of Professional Conduct when she contacted PRAO and called PRAO only to seek advice as to whether she had a personal obligation to report what she had heard in the hallway. ID at 10-11. The administrative judge further found that, although the appellant did not know when she spoke with the PRAO attorney or her second-level supervisor whether the ex parte contact had been reported to the court, she did not believe that the information had been disclosed to the court. ID at 11. The administrative judge concluded that, "while it is reasonable to conclude that the appellant's communications with PRAO and [her second-level supervisor] did not constitute disclosures of the type meant to be protected under 5 U.S.C. § 2302, in light of the extremely liberal analysis required to be applied in such cases, I find that they were protected under the statute." ID at 11. The administrative judge further found that the appellant proved that her disclosures were a contributing factor in the personnel actions because management officials were aware of the disclosures and took the actions within a period of time such that a reasonable person could conclude that the disclosures were a contributing factor. ID at 12.

¶5 Nevertheless, the administrative judge held that the agency proved by clear and convincing evidence that it would have taken the same actions absent the appellant's disclosures. ID at 36. The administrative judge found that the

agency's evidence supporting its performance-based action was "ample" and sufficient to comprise substantial evidence, that it was clear the appellant's performance had been perceived as declining in the years leading up to the PIP, that those performance issues had been discussed repeatedly with the appellant, and that resorting to a PIP had not only been actively contemplated and pursued but discussed with the appellant long before she contacted PRAO and shortly thereafter before those who approved the PIP knew of that contact. ID at 14-29. The administrative judge also held that the agency's motive to retaliate was "scant" and "exceedingly weak" because there was no evidence of harm to the supposed retaliators, the information disclosed was "innocuous," the attorneys who may have been concerned about the matter had no role in the PIP or other agency actions, PRAO merely gives advice or suggestions such that "no AUSA would fear its involvement in their cases, as one might the Office of Professional Responsibility or the Office of Inspector General," and the issue raised by the appellant to the PRAO attorney was thoroughly concluded with no adverse consequences to anyone by the time the decision was made to place the appellant on the PIP. ID at 29-34. The administrative judge further found that it was exceedingly difficult to believe that the disclosures created a level of animus that would:

> move an entire high-level chain of command of busy professionals to fabricate the need for the extremely laborious and time-consuming process of gathering numerous examples of performance deficiencies, marshalling them into a lengthy and detailed PIP letter, spending many hours over the course of months working with the appellant, and finally drafting a 30-page proposal notice, with hundreds of pages of attached documentation.

ID at 34. Finally, the administrative judge found that the agency had placed three other AUSAs on PIPs since 2003, none of those employees were whistleblowers, and the agency therefore showed that it had taken similar actions against nonwhistleblowers who were otherwise similarly situated to the appellant. ID at 34-35.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The Agency's Cross Petition for Review</u>

¶6     The agency asserts that the administrative judge incorrectly found that the appellant had a reasonable belief that she made a protected disclosure. Petition for Review (PFR) File, Tab 8 at 4-5. In particular, the agency asserts that the appellant was not aware of California Rule of Professional Conduct 5-320, which addresses contact with jurors, when she made her disclosures. *Id.* at 8-9, 12. The agency also contends that the appellant has not suggested that she believed that the U.S. Attorney's Office or the fellow AUSA violated any other law, rule, or regulation by not immediately reporting the ex parte contact to the court. *Id.* at 12-13.

¶7     In general, a protected disclosure must identify a specific law, rule, or regulation that was violated. *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001). Nevertheless, this requirement does not necessitate identifying a statutory or regulatory provision by title or number when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation. *Id.* Here, we find that the appellant's disclosures that a fellow AUSA had not notified the court of his knowledge of an ex parte contact between defense counsel and a juror during a criminal trial clearly implicated the question of whether the fellow AUSA had an ethical obligation to do so under the California Rules of Professional Conduct. *See* Cal. Rule of Prof. Conduct 5-320(B) (noting that during trial a member connected with the case shall not communicate directly or indirectly with any juror), 5-320(G) (requiring a member to reveal promptly to the court improper conduct toward a person who is a juror of which the member has knowledge). Any failure by the appellant to identify a specific law, rule, or regulation when making the disclosures does not, therefore, mean that she did not reasonably believe that an ethical rule had been violated. *See Langer*, 265 F.3d at 1266 (finding that "Langer's mentioning to the AUSAs and his supervisor that

he believed there was a problem with a disproportionately high number of African Americans being prosecuted clearly implicated the question of selective prosecution and sufficiently raised possible violations of civil rights to constitute a protected disclosure"); *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶¶ 7, 9-10 (2014) (finding protected disclosures concerning staff mistreating students, even when the disclosures did not reference a law, rule, or regulation, because the agency's regulations clearly mandated the safety and security of staff and students); *Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶¶ 16-21 (2010) (finding protected a disclosure of a physical threat of harm, even though the disclosure did not identify a law, rule, or regulation); *Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, ¶¶ 12-13 (2004) (finding protected a disclosure that the agency failed to give its employees breaks, even absent a reference to a specific law, rule, or regulation); *Kalil v. Department of Agriculture*, 96 M.S.P.R. 77, ¶ 16 (2004) (finding protected a disclosure that could reasonably be regarded as evidencing an obstruction of justice violation, even though the appellant did not cite any specific law, rule, or regulation); *Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 8 (2003) (finding protected a disclosure that a coworker was working on personal items when he should have been performing agency work, even though the appellant did not identify a specific regulatory violation). Because we agree with the administrative judge that the appellant reasonably believed that failing to report the ex parte contact implicated certain ethical obligations, she need not also have believed that such failure violated another law, rule, or regulation.

¶8      The agency further claims that the appellant called PRAO only to seek its advice as to whether she might have a personal obligation to report what she heard, not to reveal agency misconduct, and that she similarly spoke to her second-level supervisor in an attempt to follow PRAO's instructions, not because she believed that any agency employee had violated a law, rule, or regulation. PFR File, Tab 8 at 13-14. We disagree. As set forth below, the appellant, while

seeking advice as to her own obligations, also indicated that an AUSA had not reported and/or was not inclined to report the ex parte contact himself. Moreover, the appellant's motive for making her disclosures, such as obtaining advice for herself, does not exclude them from protection. 5 U.S.C. § 2302(f)(1)(C);[4] *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 20 (2015).

¶9     The appellant testified that she told the PRAO attorney on March 11, 2008, "what the AUSA had told me," which was that he "wasn't inclined" to report the ex parte contact to the court. HT at 382-83, 386 (testimony of the appellant). The appellant testified that she told the PRAO attorney

> that another prosecutor in my office informed me and some others who were there that . . . he had been told after the verdict . . . by members of the jury that there had been communications between . . . the defense attorney and a juror on several occasions; and that the juror was made very uncomfortable by that; and that this prosecutor had indicated that the other members of the jury who heard about this advised her to let the judge know but that she had not, and that none of the other members of the jury had advised the court either; and that the prosecutor in my office had not notified the court.

*Id.* at 386-87. The appellant wrote contemporaneous notes of her discussion with the PRAO attorney, which indicate the appellant's having reported that she and

> some of my colleagues heard another colleague tell us about talking to the jury after a guilty verdict in his trial. He said that one juror told him that the defense attorney approached her several times outside of the jury proceedings [and] that made her uncomfortable. She told some of the other jurors who encouraged her to tell the judge. She said she didn't tell the judge. I [and] 2 other of my colleagues encouraged this attorney to tell the presiding judge about it. He responded that he was not inclined to do that. PRAO attorney

---

[4] Section 2302(f)(1)(C) was enacted as part of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, § 101, 126 Stat. 1465, 1466. The Board held in *Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 9-23 (2013), that section 101 was a clarification of existing law and applied retroactively. In any event, even prior to the passage of the WPEA, the Board recognized that an appellant's motive for making a disclosure was not relevant to whether that disclosure was protected. *Molinar v. Department of Veterans Affairs*, 80 M.S.P.R. 248, ¶ 9 (1998).

> asked if I'd talked to my supervisor about [it]. I told her that he was present when [my] colleague talked about it. I told her I wanted to know if I had a responsibility to do anything about [it]. She said she would look into it [and] be back in touch w[ith] me. She asked if this was a recent event. I said it occurred last week.

W-2 AF, Tab 14, OSC Exhibit (Ex.) 213 at 104-05. The AUSA did not deny stating that he was not inclined to report the ex parte contact; rather, he testified that he did not recall making that statement. HT at 48-49 (testimony of the AUSA).

¶10    The appellant further testified that, although she was not aware of a specific name or number of a rule that required the reporting of the ex parte contact, she knew that the judge in question had required such reporting in previous cases, she considered herself an officer of the court, and she believed that failing to report the ex parte contact "was a violation of ethical responsibility, ethics." HT at 384-85 (testimony of the appellant). She testified that she called PRAO to seek advice as to what duty she had in that situation and that she did not tell the PRAO attorney which AUSAs had worked on the case because she was not calling "for the explicit purpose of getting anyone in trouble." HT at 387, 395 (testimony of the appellant). She testified that the PRAO attorney mentioned a rule of candor with the court as well as a California bar rule requiring the reporting of the ex parte contacts to the court. HT at 396 (testimony of the appellant). She testified that she told the PRAO attorney that she did not know if the agency might report it in the future, but that up to that point she believed that it had not been reported to the court. HT at 397 (testimony of the appellant).

¶11    The PRAO attorney testified that she did not "think" the appellant told her that her fellow AUSA was not inclined to report the ex parte contact and that her recollection was that the appellant did not know whether it was going to be reported. HT at 1623-24 (testimony of the PRAO attorney). She nevertheless testified that, when she completed a summary sheet of her conversation with the appellant, she believed that the question of whether the ex parte contact was

going to be reported or had been reported was still "a work in progress." HT at 1624 (testimony of the PRAO attorney). In fact, an inquiry summary sheet indicates that the PRAO attorney initially suggested to the appellant that she,

> tell the Prosecutor or a supervisor that she had contacted PRAO to discuss whether she had any obligations to report the information she had heard, and that she had been advised by PRAO that, depending on all of the relevant facts, the contact may need to be reported to the court by the AUSA who had experienced the contact or by a supervisor.

W-2 AF, Tab 24 at 6. The PRAO attorney's indication in the inquiry summary sheet—that the appellant should tell the AUSA in question that he may need to report the contact—supports the appellant's contention that she informed the PRAO attorney that the AUSA had not reported the ex parte contact to the court. The appellant also testified that, when she spoke with her second-level supervisor, HT at 917, she "told him that I was still thinking or concerned that the ex parte contact that [her fellow AUSA] had talked about after the . . . trial and that he had talked about just the week before, I said I was—I was still concerned that I thought this matter needed to be reported to the court," HT at 392 (testimony of the appellant). The second-level supervisor testified that the appellant expressed her concern to him about the juror contact. HT at 977 (testimony of the second-level supervisor). Thus, we find that the record evidence establishes that the appellant, in making her disclosures, not only requested advice regarding whether she had a duty to report the ex parte contact but also disclosed and expressed her concern that her fellow AUSA had not or was not inclined to do so.

¶12    The agency further contends that any belief the appellant may have had that she disclosed a violation of law, rule, or regulation was not reasonable because she was "acting on a fragment of a conversation that she had heard in the hallway a week prior," she did not know whether her fellow AUSA had reported the ex parte contact to the court, she sent an email to the PRAO attorney noting that the

AUSA did not indicate whether he intended to notify the judge, and the PRAO attorney testified that she did not have enough information to determine whether the AUSA had violated a rule. PFR File, Tab 8 at 15-16. The agency contends that additional facts were readily ascertainable if the appellant had spoken to the AUSA between the date of the hallway conversation and her telephone call to the PRAO attorney, such as the fact that the AUSA intended to research his responsibilities and "explore the matter further." *Id.* at 16-17.[5]

¶13    As set forth above, the appellant had sufficient information to reasonably believe that the AUSA in question had not reported the ex parte contact to the court, even though he was obligated to do so under ethics rules. The agency has not shown that the appellant was required to contact the AUSA an additional time to ascertain whether his intentions regarding not reporting the ex parte contact to the court had changed. *See Conrad v. Department of Justice*, 99 M.S.P.R. 636, ¶¶ 10, 13-14 (2005) (finding that the appellant was not required to confront the alleged wrongdoers to establish that his belief was reasonable and that an employee need not prove an actual violation to establish that he had a reasonable belief that his disclosure met the statutory criteria). Under these circumstances, we find that the agency has shown no error in the administrative judge's finding that the appellant reasonably believed that she made protected disclosures.

The Intervenor's Petition for Review

¶14    The intervenor asserts that the administrative judge improperly applied the lower, substantial evidence standard that the Board uses in performance-based actions in evaluating the strength of the evidence in support of the agency's actions, rather than the more stringent clear and convincing evidence standard. PFR File, Tab 4 at 10. More specifically, the intervenor asserts that the

---

[5] The agency further contends that the acting officials did not perceive the appellant as a whistleblower. PFR File, Tab 8 at 17-23. We need not address this argument because we agree with the administrative judge that the appellant proved by preponderant evidence that she made protected disclosures.

administrative judge should have evaluated whether the agency had strong evidence to support its personnel actions and erroneously relied on a finding that the agency produced substantial evidence in support of its actions "as sufficient to determine that clear and convincing evidence showed that the Agency would have taken the same action regardless of Appellant's whistleblowing." *Id.* at 10, 12. Thus, the intervenor contends that the administrative judge did not "rigorously analyze the strength of the evidence, beyond his general finding that it met the substantial evidence standard." *Id.* at 13. We disagree.[6]

¶15        The administrative judge correctly set forth the standard in this case, noting that the Board must order corrective action unless the agency establishes by clear and convincing evidence[7] that it would have taken the same personnel actions absent the disclosures.        ID at 12-13; *see* 5 U.S.C. § 1221(e)(1)-(2). The administrative judge also correctly found that, in determining whether an agency has shown by clear and convincing evidence that it would have taken the same actions absent the disclosures, the Board will consider the strength of the evidence in support of its actions, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decisions, and any evidence that the agency takes similar actions against employees who are

---

[6] The intervenor and the agency have filed additional pleadings addressing *Miller v. Department of Justice*, 842 F.3d 1252 (Fed. Cir. 2016), and its possible application to this appeal. PFR File, Tabs 20-21. In *Miller*, which did not involve a performance-based action under 5 U.S.C. chapter 43 as in this case, the court addressed the connection between the clear and convincing evidence burden of proof on the agency and the court's own substantial evidence standard of review, noting that what constitutes substantial evidence for purposes of the court's review may be determined only with respect to the burden of proof that the litigant bore in the trial court. 842 F.3d at 1258. The intervenor has not shown that this principle, or any other holding set forth in *Miller*, affects our determination, except as set forth below, that the administrative judge correctly applied the clear and convincing evidence standard in this case.

[7] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e).

not whistleblowers but who are otherwise similarly situated. ID at 13; *see Carr v. Social Security Administration*, [185 F.3d 1318](), 1323 (Fed. Cir. 1999).

¶16    The administrative judge's discussion of the substantial evidence standard arose in connection with his analysis of the intervenor's contention that the agency's failure to show a clear and convincing basis for the PIP required a finding that the PIP, the proposed removal, and the decision notice "cannot be sustained." ID at 14. The administrative judge found that an agency does not need to prove in an IRA appeal the merits of the action by the usual applicable burdens of proof, much less by clear and convincing evidence. *Id.* The administrative judge correctly held that an agency instead must show by clear and convincing evidence that it would have taken the same action absent the protected disclosure. *Id.* The administrative judge therefore held that, "while the agency in this case need not necessarily introduce substantial evidence sufficient to support its performance-based actions, the Board may consider the strength of the agency's evidence in support of its actions." *Id.*

¶17    The administrative judge then found that "*if* this were a regular appeal strictly of a performance-based action under Chapter 43 of title 5 of the United States Code, the agency's evidence in support of it would be sufficient to comprise substantial evidence . . . ." ID at 14-15 (emphasis added). The administrative judge thereafter otherwise correctly applied the clear and convincing evidence standard in this case. The administrative judge reviewed and considered the testimony of the appellant's peers and others who worked with her on cases and who believed that she had done some good work, was not at fault for excessive delays cited in the proposal and decision notices, was not too nervous at trial, and wrote indictments that were legally sufficient. Despite this evidence, the administrative judge found that the agency's failure to rely on these individuals as witnesses did not undermine its case because the agency called as witnesses the managers who actually supervised and evaluated the appellant or reviewed and assessed her performance as a part of their duties. ID at 15.

¶18    The administrative judge further noted that the letter placing the appellant on a PIP provided specific and detailed examples of performance deficiencies in four of her five critical elements, and the proposal notice provided extremely detailed explanations of her deficiencies, synthesized the evaluations of three supervisors, and incorporated criticism of her performance by an AUSA in another district office, the Federal Bureau of Investigation and investigating agents with whom she worked, as well as the presiding judge in one of her trials during the PIP. ID at 15-16; W-2 AF, Tab 8, OSC Ex. 65, Tab 9, OSC Ex. 95. Despite the appellant's contentions that the deficiencies set forth in the proposal notice were false, petty, or overblown, the administrative judge found that the hearing testimony

> establishes that the agency received numerous complaints from investigators and case agents with whom she worked, expressing frustration with the length of time it took for her to indict cases, and explaining that repeated inquiries were met with her protestations that she had not had time to do so, or that such inquiries were met with silence.

ID at 16. The administrative judge found that the evidence also established that the appellant's supervisors on several occasions had to remind her to indict cases that had been assigned to her for more than 1 year and often had to give her explicit deadlines for doing so and that the appellant was sometimes unable to comprehend inquiries from judges during oral arguments, leading them to openly criticize her for failing to answer questions. ID at 16-17. The administrative judge further found that there was substantial evidence that such problems continued during the PIP period and that testimony from several managers supported the charges that the agency received complaints and requests for intervention from individuals with whom the appellant worked, the appellant unnecessarily delayed indicting cases and failed to work collegially with others, she failed to effectively "marshall" evidence necessary to support specific charges in indictments, she failed to move cases forward to settlement or trial

despite repeated prompting from her supervisors, and she did not, according to a judge, have the instincts and natural inclination for jury trials. ID at 17.[8] In making these factual findings, the administrative judge relied upon the demeanor of key witnesses. ID at 18, 27, 33; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

¶19    The administrative judge found that this evidence "clearly constituted at least substantial evidence" in support of the agency's actions. ID at 18. Despite this reference to "substantial evidence," the administrative judge concluded his analysis of this section of the initial decision by finding that the "relative strength of the agency's evidence in support of its finding that the appellant had not successfully completed the PIP, and that her performance under it was unsuccessful, is ample." ID at 29. The administrative judge later addressed the existence and strength of any motive to retaliate and any evidence that the agency took similar actions against employees who were not whistleblowers but who otherwise were similarly situated, ultimately concluding that, upon weighing the three factors set forth in *Carr*, "the strength of the agency's evidence in support of its actions is ample, the strength of any motive to retaliate on the part of the agency officials who were involved in the decision is exceedingly slight, and the evidence that the agency takes similar actions against employees who are not

---

[8] The intervenor further asserts that, although the administrative judge was required to assess the strength of all the charges the agency relied upon in taking its actions, he made no determination as to any of the specific counts listed in the PIP or the notice of proposed removal. PFR File, Tab 4 at 14. The above findings by the administrative judge, however, generally correspond to the critical elements and charges set forth in the proposal and decision notices, which include specific allegations of unacceptable performance relating to the critical elements of Case Handling, Advocacy, Productivity, and Writing. IAF, Tab 11 at 26-35, Tab 17 at 5-34, 36-50.

whistleblowers but who are otherwise similarly situated is clear." ID at 29-36. He therefore found that the agency proved by clear and convincing evidence that it would have taken the same actions against the appellant absent her disclosures. ID at 36. Thus, although the administrative judge made several references to the substantial evidence standard in his initial decision, we find that he ultimately applied the correct legal standard in this case.[9]

¶20　　　The intervenor also asserts that the administrative judge did not evaluate all of the evidence, including countervailing evidence, in determining whether the agency proved by clear and convincing evidence that it would have taken the same actions absent the appellant's whistleblowing. PFR File, Tab 4 at 15. In particular, the intervenor contends that the administrative judge did not evaluate or weigh the "voluminous" evidence the appellant produced to rebut each of the charges of poor performance levied against her in the PIP letter and in the notice of proposed removal, as well as testimony from witnesses who challenged the agency's allegations of poor performance and instances of "over-reaching" by the agency during the PIP. *Id.* at 15-17. As set forth above, however, the administrative judge considered the countervailing evidence submitted by the appellant but nevertheless found that the agency's evidence was sufficiently "ample" to warrant, along with the other *Carr* factors, a finding that the agency proved by clear and convincing evidence that it would have taken the same actions absent the appellant's protected disclosures. In this respect, we find that the administrative judge complied with the guidance set forth in *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), concerning the clear and convincing evidence test. Unlike in *Whitmore*, 680 F.3d at 1368-72, wherein the court found that the administrative judge abused her discretion by excluding or

---

[9] Even assuming that the administrative judge did not apply the correct legal standard, we hold, based on the factual findings made in the initial decision, that the agency produced strong evidence in support of its actions and ultimately proved by clear and convincing evidence that it would have taken the same actions absent the appellant's protected disclosures. ID at 13-36.

failing to consider evidence offered by the appellant that was necessary to adjudicate his whistleblower claim, the administrative judge here did not prevent the appellant from effectively presenting her case. The administrative judge approved all of the witnesses requested by the appellant and the intervenor, *compare* IAF, Tab 56, *with* IAF, Tab 62 *and* HT (June 24, 2015), held an 8-day hearing, and admitted and considered thousands of pages of evidence submitted by the appellant and the intervenor. Moreover, the thoroughly explained initial decision and lengthy hearing transcript reveal that the administrative judge listened closely to the testimony of witnesses from both sides, including those who bolstered the appellant's claim of reprisal for whistleblowing. *See Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶¶ 22-23 (2016).

¶21 The intervenor further asserts that the administrative judge improperly relied on non-*Carr* factors when he held that the agency had nonretaliatory reasons for its actions, such as the appellant's alleged poor performance for many years before her placement on a PIP, her prior supervisor's failure to take appropriate action during that time because he was "too kind" and had a large workload, and her new supervisor's willingness to be more confrontational and "micro-manage" the appellant. PFR File, Tab 4 at 18-19. The intervenor asserts that the administrative judge's considering these nonretaliatory reasons as part of his analysis of the strength of the agency's evidence was improper because he did not assess the actual charges brought against the appellant or the evidence supporting those charges. *Id.* at 19. The intervenor contends that a nonretaliatory explanation for personnel actions will be offered in every whistleblower case and evidence in support of such an explanation cannot be all that is required for the agency to meet its burden of showing that it would have taken the same action absent the disclosures. *Id.* at 20-22.

¶22 Although the intervenor contends that the administrative judge improperly relied on "nonretaliatory reasons," such as the appellant's pre-PIP deficiencies, in finding that the agency's evidence in support of its actions was strong, we

disagree. The administrative judge made these findings in response to arguments raised by the intervenor and the appellant that the appellant's annual performance ratings before her placement on the PIP contained no criticism, that the agency began to closely scrutinize her work only after her disclosures, and that the appellant had no prior notice that her performance was considered deficient until the agency placed her on a PIP. ID at 18-29. Further, the administrative judge's discussion of the years leading up to the PIP shed light upon his findings regarding the appellant's credibility. As the administrative judge found, these well-documented performance issues and meetings with supervisors "bel[ie] the appellant's testimony" of her unblemished career and prove that her claim that the PIP came out of nowhere "is simply not accurate." ID at 19 n.11, 26 n.16. Moreover, as set forth above, the administrative judge did not rely upon these findings relating to the appellant's pre-PIP performance as the sole basis for his finding that the agency's evidence in support of its actions was strong. ID at 13-18. Instead, as previously discussed, the administrative judge's determination that the agency submitted "ample" evidence in support of its actions was based on testimonial and documentary evidence, bolstered in part by his demeanor-based credibility findings, that corresponded to the critical elements addressed in the PIP and the charges set forth in the proposal and decision notices.

¶23    Thus, we find that the intervenor has not established a basis for disturbing the factual findings and legal conclusions made by the administrative judge.[10]

---

[10] The intervenor has filed a motion for leave to submit an additional pleading that would discuss the applicability of *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021), to this case. PFR File, Tab 23. We deny the motion because the intervenor has not shown that the additional argument would be material, i.e., of sufficient weight to warrant a different outcome from that of the initial decision. 5 C.F.R. § 1201.114(k); *see Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). In *Santos*, the court held that, in addition to the five elements an agency must prove in a performance-based action taken under 5 U.S.C. chapter 43, the agency also must justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the

The Appellant's Petition for Review

*The agency's evidence in support of its actions is strong.*

¶24    Regarding the strength of the agency's evidence, the appellant contends that the initial decision provides a terse, one-page summary of a voluminous record involving her work performance without identifying any of the four counts upon which her PIP and decision letter were based. PFR File, Tab 3 at 22-23. She also asserts that several of the agency's specific findings regarding her performance were unexplained or improperly determined. *Id.* at 24-25. As set forth above, however, the administrative judge's findings generally reflect the critical elements set forth in the PIP and the charges set forth in the proposal and decision notices, which included specific allegations of unacceptable performance related to the critical elements. ID at 15-17. The appellant's assertions do not establish that the administrative judge erred when he found "ample" evidence in support of the personnel actions taken by the agency. ID at 29, 35.

¶25    The appellant also contends that, instead of addressing the evidence supporting the personnel actions, which all occurred in 2008, the administrative judge addressed the appellant's performance in prior years. PFR File, Tab 3 at 23, 26. As previously discussed, this analysis placed the appellant's more recent performance issues in context and was made in response to the appellant's claims that the agency closely scrutinized her work only after her disclosures and that she was not aware that her performance was deficient until the agency placed

PIP. *Santos*, 990 F.3d at 1360-61. We find that this case is distinguishable from *Santos*. First, this case does not involve an action taken under 5 U.S.C. chapter 43. Rather, it is an IRA appeal, under which the Board lacks the authority to adjudicate the merits of the underlying personnel action. *See Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). Second, the personnel actions in this case do not include a removal for unacceptable performance. As set forth above, the appellant appears to have resigned in lieu of removal. In any event, given that one of the personnel actions involved the appellant's placement on a PIP, the administrative judge addressed the appellant's pre-PIP performance in great detail, finding significant evidence in support of that action. ID at 13-29. Thus, we find no basis for granting the intervenor's motion in this case.

her on a PIP. ID at 18-29. Therefore, the appellant has shown no error in the administrative judge's more extensive review of the appellant's performance.

*The relevant agency officials did not have a strong motive to retaliate.*

¶26     The appellant asserts that the administrative judge erred when he found that the agency did not have a strong motive to retaliate because he improperly focused on the supposed triviality of the content of the ex parte communications, rather than on the disclosures themselves. PFR File, Tab 3 at 11-12. We disagree. In response to the appellant's argument that her disclosures angered agency officials because they might have led to a challenge of the defendant's conviction in the criminal case, the administrative judge addressed the nature of the ex parte contacts, which were a part of the disclosures, in finding that the appellant had exaggerated and mischaracterized the evidence. ID at 29-30. The administrative judge properly considered what he found to be the "innocuous" nature of the ex parte communications in deciding whether any agency officials would have likely been so concerned about the verdict as to establish a motive on their part to retaliate against the appellant for her disclosures. ID at 30; *Ryan v. Department of the Air Force*, 117 M.S.P.R. 362, ¶ 14 (2012) (finding that assessing the existence and extent of any retaliatory motive cannot be properly made without considering the nature of the disclosures).

¶27     The appellant also contends that the administrative judge ignored evidence pertaining to the potential harm to agency officials resulting from the disclosures and that he gave too much weight to the testimony of agency officials who denied having a retaliatory motive. PFR File, Tab 3 at 12. In this regard, the appellant asserts that the administrative judge ignored evidence that her disclosures threatened the "integrity" of the verdict in the criminal case and threatened to expose the ethical lapses of agency officials who were complicit in the AUSA's failure to report the ex parte contacts. This allegedly ignored evidence included the appellant's testimony that her second-level supervisor told her that management did not want to disturb the verdict, testimony that the AUSA was

discouraged from reporting the ex parte communications to the court, and a statement from PRAO that the ex parte communications went to the integrity of the verdict. *Id.* at 13-14.

¶28     The Federal Circuit has cautioned us against taking too narrow a view of the second *Carr* factor. In *Whitmore*, 680 F.3d at 1370, the court stated, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." The court in *Whitmore* determined that, when a whistleblower makes highly critical accusations of an agency's conduct that draws the attention of high-level agency managers, the fact that an agency official is "outside the whistleblower's chain of command, not directly involved in alleged retaliatory actions, and not personally named in the whistleblower's disclosure is insufficient to remove the possibility of a retaliatory motive or retaliatory influence," and that the Board should consider any motive to retaliate on the part of the agency official who ordered the action, as well as that of any officials who influenced the action. *Id*. at 1371. In *Miller*, 842 F.3d at 1261-62, the court instructed the Board not to limit its consideration of a motive to retaliate to the appellant's supervisors, but to examine whether a retaliatory motive could be imputed more broadly to other officials or entities involved in the decision. Similarly, in *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019), the court found that, although the deciding official did not have a personal motive to retaliate against the appellant for contradicting an agency Under Secretary, the administrative judge erred by failing to consider whether he had a "professional retaliatory motive" against the appellant because his disclosures "implicated the capabilities, performance, and veracity of [agency] managers and employees, and implied that the [agency] deceived [a] Senate Committee." Nevertheless, after considering the administrative judge's reliance upon the deciding official's credibility and

demeanor in his determination that the deciding official lacked a motive to retaliate, the court agreed with the administrative judge that there was no retaliatory motive, either professional or personal. *Id.* at 1019-20. The court in *Robinson* therefore found that that the second *Carr* factor slightly favored the agency and that the agency met its overall clear and convincing evidence burden given the strength of *Carr* factor one and the neutral evidence regarding the third *Carr* factor. *Id.* at 1020.

¶29     Here, the administrative judge considered the appellant's arguments concerning potential harm to agency officials, including those who were not her supervisors, but found them unavailing. ID at 29-34. Moreover, although the appellant contends that her testimony and contemporaneous notes show that her second-level supervisor told her that management did not want the verdict to be disturbed, PFR File, Tab 3 at 13, the administrative judge found that the second-level supervisor vehemently denied making such a statement and that this allegation was not reflected in the appellant's correspondence with PRAO or the testimony of the PRAO attorney, ID at 8-9. In any event, even assuming that there was initial concern about disturbing the verdict, the evidence set forth by the administrative judge suggests that any concern decreased as management learned more about the "innocuous" nature of the ex parte communications. ID at 5-10, 30-34. Although some evidence suggests that the agency determined that it was not necessary to immediately report the ex parte communications to the court, W-2 AF, Tab 7, OSC Ex. 16, Tab 11, OSC Ex. 158, that same evidence, as well as testimony found persuasive by the administrative judge, ID at 6, 29-34, also indicates that the agency requested that the AUSA research the matter further and take any appropriate action, including drafting a memorandum for management explaining what had occurred. The fact that the AUSA informed his supervisor that the judge in the criminal case had "polled" jurors when one juror alleged that another juror had suggested that they were not obligated to follow the law, W-2 AF, Tab 7, OSC Ex. 18, and that PRAO ultimately informed

management that the contact should be reported to the court, W-2 AF, Tab 12, OSC Ex. 207, do not suggest that management officials were overly concerned about the effect of the disclosures on the verdict or worried about repercussions they might face for the delay in informing the court.

¶30   The appellant also asserts that her first-level supervisor, whom she claims was the "architect" of the PIP, had a strong motive to retaliate because the disclosures exposed the supervisor's instruction to the AUSA not to report the ex parte communications to the court and thereby reflected negatively on her supervisory abilities. PFR File, Tab 3 at 14-15. The appellant asserts that other officials were motivated to retaliate because a Professional Responsibility Officer concluded that the ex parte communications must be brought to the court's attention, the California rule in question is stringent and requires revealing such communications promptly, and many agency officials were involved in discussions regarding the matter for several weeks. *Id.* at 15-16.

¶31   The administrative judge addressed these arguments, finding that although the appellant asserted that the agency had a motive to retaliate because her disclosures might "bring to light ethical lapses of several AUSAs and supervisors," ID at 29, the "entire matter had concluded, with no ill effect on anyone, by mid-April [2008] when the contact was reported to the court," several months before the appellant's July 2008 placement on a PIP, and the appellant's first-level supervisor testified that "no one could get in trouble" as a result of the appellant's disclosure to PRAO, ID at 32. Further, the appellant has shown no error in the administrative judge's determination that, because PRAO merely gives advice or suggestions, no AUSA would fear its involvement in their cases. ID at 33. In any event, the appellant's disclosures did not reveal any alleged misconduct by her first-level supervisor. Rather, her disclosures merely informed PRAO and her second-level supervisor that the matter had not been reported to the court by the AUSA despite a possible ethical responsibility by him to do so. Although a Professional Responsibility Officer ultimately concluded that the

ex parte communications must be brought to the court's attention, and although many agency officials were involved in discussing the matter for several weeks, these facts do not demonstrate error in the administrative judge's analysis.

¶32    The appellant further asserts that an Executive Assistant U.S. Attorney (EAUSA) who dealt with personnel issues for the U.S. Attorney, ID at 22, and who corresponded with the appellant's first-level supervisor regarding the appellant's performance, indicating that a PIP was the "right direction" to take and "in order" for the appellant, W-2 AF, Tab 7, OSC Ex. 11, Tab 8, OSC Ex. 32, also had a motive to retaliate because her involvement in the matter and rush to place the appellant on the PIP departed from the agency's normal process, and her knowledge of the appellant's performance deficiencies came from the first-level supervisor, PFR File, Tab 3 at 16-17. The appellant testified that, even if the EAUSA did not know directly of the disclosures before the appellant's placement on the PIP, the first-level supervisor told her of the appellant's contact with PRAO within moments of learning of it. *Id.* at 17.

¶33    The appellant has not, however, shown that the administrative judge erred when he found that the EAUSA was a "very reasonable, articulate, and straightforward witness" who testified that she made the above statements regarding the appropriateness of a PIP for the appellant before she became aware of the appellant's disclosures. ID at 27-28. In addition, the appellant has not explained how the EAUSA rushed the appellant's placement on a PIP and what departure from the "normal" process was involved, aside from asserting that informal measures were not used. W-2 AF, Tab 4 at 18-21. We note that the EAUSA had asked the agency's Office of General Counsel about placing the appellant on a PIP in April 2007, eleven months before the appellant made her disclosures and over 1 year before the July 2008 PIP, ID at 27; W-2 AF, Tab 8, OSC Ex. 65, and that the agency had a long history of concerns regarding the appellant's performance prior to her disclosures, ID at 18-29. In addition, despite the appellant's contention that the EAUSA learned of the appellant's disclosure

within minutes after the appellant's first-level supervisor learned of the disclosures—which the administrative judge found was before the appellant's placement on the PIP, ID at 12—the EAUSA actually stated during her sworn investigatory interview with the Office of Special Counsel that she learned that the appellant had contacted PRAO long after the appellant's July 2008 placement on the PIP. W-2 AF, Tab 12, OSC Ex. 173 at 22, 25, 29-30. Although the EAUSA indicated that she thought the first-level supervisor first learned of the appellant's disclosures "within minutes of calling me," she also testified that she did not remember whether the first-level supervisor told her of when she learned of the disclosures; she did not know how the first-level supervisor knew that it was the appellant who made the disclosures; and the Office of Special Counsel would have to ask the first-level supervisor to confirm such information. *Id.* at 29-31.

¶34    The appellant also asserts that her first-level supervisor and another manager who helped supervise the PIP determined that the appellant showed poor judgment in making the disclosures, and that the administrative judge mentioned these statements but did not draw the necessary inference that such a negative opinion showed a motive to retaliate. PFR File, Tab 3 at 18. The appellant further contends that, while the administrative judge recognized that the fellow AUSA was annoyed and concerned by the appellant's disclosures, he was more than simply annoyed and concerned because he investigated the source of the disclosures, angrily confronted the appellant when he learned that she had made them, and told another AUSA that the appellant was the "culprit" and that the disclosures might alter his relationship with the appellant. *Id.* at 18-19. The appellant asserts that it is "highly likely" that the AUSA influenced her placement on a PIP and subsequent termination because he "planned" to discuss the matter with the appellant's first-level supervisor, who was his friend. *Id.* at 19.

¶35    Although the appellant contends that agency officials were motivated to retaliate because they indicated that the appellant showed "poor judgment" in

making her disclosures, one of those references was made by one of the trial attorneys in the criminal case to the other AUSA when she noted that the appellant had contacted PRAO on a case that was not assigned to her and without having all of the relevant information. W-2 AF, Tab 11, OSC Ex. 166. A manager who reviewed the appellant's performance during the PIP with the appellant's first- and second-level supervisors testified that the appellant's decision to contact PRAO showed poor judgment because he thought that the nature of the contact between the defense attorney and the juror was trivial, i.e., saying "Good morning" and "How are you?" to jurors at a coffee shop. HT at 187-88, 204 (testimony of the nonsupervisory AUSA). This evidence, which suggests that a coworker and a manager who was not the appellant's supervisor may have disagreed with or been disturbed by the disclosures, does not show that the officials who placed the appellant on a PIP, proposed her removal, and issued a decision letter shared in those beliefs or harbored any motive to retaliate against her. The administrative judge addressed these issues, finding that the AUSA had no role in the PIP or subsequent agency actions, and that the individuals who did take the personnel actions were not annoyed by the disclosures and otherwise had only a weak motive to retaliate. ID at 32-34. The appellant has not shown that the administrative judge erred in evaluating the countervailing evidence in support of her position. Her speculation that it was "highly likely" that the fellow AUSA influenced the appellant's first-level supervisor to place the appellant on a PIP because he "planned" to discuss the matter with the supervisor, who was his friend, does not show that he discussed the matter with the supervisor or otherwise influenced her, nor does it show that the administrative judge erred in finding that the agency's motive to retaliate was not strong. ID at 34.

¶36      Next, the appellant asserts that the administrative judge did not address the close temporal proximity between her disclosures and the personnel actions, given that the agency began discussing and taking steps to place her on a PIP less than 1 week after learning of the disclosures. PFR File, Tab 3 at 19-20. The

appellant contends that, although the administrative judge acknowledged this temporal proximity in his contributing factor analysis, he did not consider it in his analysis of the agency's motive to retaliate. *Id.* at 20.

¶37    Despite the appellant's contentions, the administrative judge *did* address the appellant's claim concerning the timing of her placement on a PIP.  ID at 18.  The administrative judge noted that there was significant evidence that the appellant's supervisors were concerned about her performance for years and had become increasingly concerned in the year leading up to the 2008 PIP.  ID at 18-29.  In addition, the administrative judge found that the appellant's placement on a PIP coincided with an office reorganization in February 2008 that resulted in a change in supervisors for the appellant and other AUSAs and a more coordinated approach to addressing the appellant's performance issues.  ID at 21, 25.  The administrative judge noted that this change resulted in supervisors having to supervise only 8 attorneys rather than 17, and that the appellant's new first-level supervisor had more of a "micromanaging" style and was less lenient than her former supervisor.  ID at 25-26.  The administrative judge noted that these management changes took place before the appellant made her disclosures.  ID at 26.  The appellant has shown no error in these findings by the administrative judge.

¶38    The appellant further contends that the administrative judge erroneously required her to show harm in order to establish a motive to retaliate, incorrectly interpreting the Board's decision in *Schmittling v. Department of the Army*, 81 M.S.P.R. 225, 238 (1999), *vacated on other grounds*, 219 F.3d 1332 (Fed. Cir. 2000).  PFR File, Tab 3 at 21.  The appellant asserts that the Board's decision in *Schmittling* addressed whether the acting officials were either harmed or disturbed by the disclosures.  *Id.*  The appellant claims that the agency officials in this case were at least disturbed by the disclosures and faced potential harm.  *Id.*

¶39    In discussing the existence and strength of any motive to retaliate by the agency officials who were involved in the personnel actions, the administrative

judge noted that "[t]here generally must be a showing of harm – *i.e.*, that the supposed retaliators were harmed by the employee's protected disclosure. *See Schmittling v. Department of the Army*, 81 M.S.P.R. 225, 238 (1999)." ID at 29. The administrative judge found that "[h]ere, there is no such evidence," and supported this finding with an extensive analysis of testimonial evidence presented by agency witnesses. *Id.* at 29-34. Thus, although the appellant appears to suggest that the administrative judge improperly placed the burden on her of showing no motive to retaliate, we disagree. In any event, in *Schmittling*, 81 M.S.P.R. at 238, the Board held that there was no strong motive to retaliate because the agency presented unrebutted evidence that the appellant's superiors "were neither harmed nor disturbed by the disclosures." To the extent that the administrative judge focused only on whether the acting officials were harmed by the disclosures, such an analysis would be inconsistent with *Schmittling*. Nevertheless, despite his incorrectly stating the holding in *Schmittling*, we find that the administrative judge otherwise correctly analyzed the existence and strength of any motive to retaliate in this case. The administrative judge considered whether the appellant's disclosures angered, annoyed, or concerned any of the acting officials or individuals who may have influenced those officials, i.e., disturbed them, finding that the existence and strength of any motive to retaliate was weak. ID at 29-34. Thus, we find that the administrative judge *did* consider whether any of the relevant officials in this case were harmed or disturbed by the appellant's protected disclosures, or otherwise had a personal or professional motive to retaliate against her. *See Robinson*, 923 F.3d at 1019-20; *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversing an initial decision).

¶40   We acknowledge that the acting officials may have had some motive to retaliate, even if they were not directly implicated by the appellant's disclosures, to the extent that any criticism reflected on them or others in their capacities as

agency managers and employees. Thus, the evidence regarding the second *Carr* factor does not unfailingly support the agency. *See Miller*, 842 F.2d at 1262. Nevertheless, given the administrative judge's explained and supported findings as to why any motive to retaliate was not strong, his reliance on the testimony of numerous witnesses to that effect, some of whom he found to be credible based explicitly on their demeanor, ID at 27, 32-33, and his discussion of evidence supporting the opposite result, such as the testimony of an AUSA who was "annoyed/concerned" about the appellant's disclosures, ID at 31, 33-34, we conclude after consideration of the evidence as a whole that this factor ultimately tips in the agency's favor. *See Robinson*, 923 F.3d at 1019-20; *Haebe*, 288 F.3d at 1301 (requiring the Board to give deference to credibility determinations when they are based, explicitly or implicitly, on the demeanor of witnesses).

> *The agency took similar actions against similarly situated employees who were not whistleblowers.*

¶41 Finally, the appellant contends that the agency did not submit evidence corroborating the testimony of agency officials that it had taken similar actions against three other employees who were similarly situated to the appellant. PFR File, Tab 3 at 27-28. The appellant asserts that the agency did not present evidence showing the length of service, work units, disciplinary standards, performance records, and disciplinary history of the other AUSAs who were placed on PIPs. *Id.* at 28-29. The appellant contends that the three comparators were treated differently from her because they either resigned or passed the PIP and continued working for the agency. *Id.* at 29.

¶42 The administrative judge found, based on the uncontested testimony of two witnesses, including the testimony of the EAUSA whom he found to be particularly credible, that the agency took similar actions against employees who were not whistleblowers but who were otherwise similarly situated to the appellant. ID at 27, 34-35. The appellant has provided no support for her apparent contention that testimonial evidence concerning an agency's treatment

of similarly situated nonwhistleblowers must be corroborated by written evidence. Thus, we find no basis to disturb the initial decision in this regard.

¶43    Moreover, as the court explained in *Whitmore*, 680 F.3d at 1373, "the requisite degree of similarity between employees cannot be construed so narrowly that the only evidence helpful to the inquiry is completely disregarded."  Here the agency submitted evidence of three other AUSAs who were not whistleblowers, struggled with performance issues, and were eventually placed on a PIP during the tenure of the U.S. Attorney and the EASUA.  The fact that two of the individuals who were placed on a PIP chose to resign and one individual improved her performance and passed the PIP, HT at 1685-88 (testimony of the EAUSA), does not indicate that they were treated differently from the appellant. In fact, the U.S. Attorney testified at the Board hearing that, midway through the PIPs, he informed both the appellant and one of the AUSAs who resigned that they were not improving, that they would fail the PIP if it ended the next day, and that they should consider their options, including a voluntary resignation.  HT at 1812-13 (testimony of the U.S. Attorney).

¶44    Having considered the evidence in the record as a whole, we are left with the firm belief that the agency would have placed the appellant on a PIP, proposed her removal, and issued a removal decision letter absent her protected disclosures.  Accordingly, we deny the petitions for review filed by the appellant and the intervenor and the cross petition for review filed by the agency.  The appellant's request for corrective action in this IRA appeal is denied.

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  [5 U.S.C. § 7702](b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under [5 U.S.C. § 2302](b)(8) or other protected activities listed in [5 U.S.C. § 2302](b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on

review within **60 days** of <u>the date of issuance</u> of this decision.   <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.